MFC BANCORP LTD., Plaintiff,

v.

EQUIDYNE CORPORATION,
Defendant.

C.A. No. 20386.

Court of Chancery of Delaware.
New Castle County.

Submitted Aug. 1, 2003.
Decided Aug. 13, 2003.

Brett D. Fallon, Thomas E. Hanson, and Christina M. Thompson, Morris, James, Hitchens & Williams LLP, Wilmington, Delaware; James V. Kearney, and Noreen A. Kelly–Najah, Latham & Watkins, LLP, New York, New York, for Plaintiff.

Thomas A. Beck, Richards, Layton & Finger, Wilmington, Delaware; Kevin C. Logue, Paul, Hastings, Janofsky & Walker LLP, New York, New York, for Defendant.

## OPINION

STRINE, Vice Chancellor.

In this opinion, I resolve plaintiff MFC Bancorp Ltd.'s ("MFC") request for summary judgment pursuant to 8 *Del. C.* § 211. Plaintiff MFC is a large stockholder of defendant Equidyne Corporation, and wishes to conduct a proxy fight to unseat the incumbent board at the next annual meeting. On May 24, 2003, Roy Zanatta, MFC's secretary, wrote the Equidyne board asking for Equidyne to announce the date of the 2003 annual stockholders meeting. Equidyne did not respond to MFC's letter. Equidyne's last annual meeting was held on May 28, 2002.

Thus, on June 24, 2003, MFC filed this suit asking for an annual meeting to be

compelled. As of the time MFC filed its complaint, Equidyne could no longer set an annual meeting within thirteen months of the date of its last annual meeting because Equidyne's bylaws require at least ten days notice before any stockholders meeting is held. In other words, by June 24, 2003, there was insufficient time to call an annual meeting for June 28, 2003.

Spurred by MFC's suit, Equidyne's board announced an annual meeting date of September 9, 2003 – a date that falls fifteen months and twelve days after the corporation's last annual meeting. Equidyne then argued that MFC's § 211 claim was moot because a meeting date had been set. In addition, it argued that the § 211 claim was unripe when filed and had to be dismissed for that reason because the court's power to order a meeting does not arise until thirteen months have passed without a meeting. Irrespective of the fact that the Equidyne board failed to satisfy its obligations under § 211 until after the complaint was filed, Equidyne contended that the original complaint should be dismissed and that any later complaint should be considered moot.

In this opinion, I grant the plaintiff's motion to set a meeting date and deny the defendant's motion to dismiss the amended complaint MFC filed *after* the thirteen-month statutory deadline.[1] Delaware law takes the annual election process seriously. Contrary to Equidyne's argument that it was sufficient for it merely to set a meeting date within thirteen months rather than hold a meeting within that timeframe, § 211 empowers this court to order a meeting if thirteen months passes without one. Here, Equidyne's board failed to take reasonable steps to ensure a timely

meeting. The company ignored inquiries about when its annual meeting would occur and only acted after MFC had filed this suit, at a time when it was too late to comply with § 211 and when, as a practical matter, the meeting could not occur until months after the statutory deadline.

Given this background, I am persuaded that MFC's request for a court-ordered meeting involving the statutory quorum is warranted. In view of the Equidyne board's failure to take its responsibilities under § 211 seriously in the face of a threatened election contest, the equities warrant that the statutory quorum be used. Had the Equidyne board wished to avoid that result, it could have set an annual meeting date within thirteen months of the date of its last annual meeting.

## I. *Factual Background*

The facts of this case are simple. MFC is and has been the record owner of one hundred shares of Equidyne common stock. And MFC beneficially holds over 1.3 million shares of Equidyne common stock, which represents about 9% of Equidyne's outstanding shares. Defendant Equidyne is a Delaware corporation and is publicly traded on the American Stock Exchange.

Equidyne's last annual stockholders meeting was held on May 28, 2002. At no time since that date have Equidyne's stockholders acted by written consent in lieu of an annual meeting. According to Equidyne's bylaws, before any stockholders meeting can be held, notice of not less than ten days nor more than sixty days shall be given to each Equidyne stockholder.[2]

---

1. The parties stipulated that I would decide this case on a paper record. Thus, I am free to draw inferences from the paper record in the same manner as I would have after a trial with live testimony.

2. *See* Equidyne Bylaws art. II, § 4.

On May 24, 2003—which was just a few days shy of the twelve-month anniversary of Equidyne's last annual meeting—MFC sent a letter to Equidyne. In that letter, MFC requested that Equidyne inform MFC as to the date of the next annual stockholders meeting. Equidyne did not respond to MFC's letter.

On June 24, 2003—which was four days before the thirteen-month anniversary of Equidyne's last annual meeting—MFC filed a complaint in this court. As of that date, Equidyne could not have set a meeting date within the thirteen-month period set forth in § 211 because Equidyne's by-laws require at least ten days notice before any stockholders meeting and the thirteen-month anniversary of the last annual meeting was only a few days away—*i.e.*, the thirteen-month anniversary date was June 28, 2003. In its complaint, MFC sought relief pursuant to § 211 of the Delaware General Corporation Law.[3] Put simply, § 211 allows this court to order a corporation to hold an annual stockholders meeting if the corporation has not held such a meeting for a period of thirteen months

since the latest of: (1) its last such meeting; (2) the last time its stockholders acted by written consent in lieu of such a meeting; or (3) its date of incorporation.[4] In its complaint, MFC sought an order requiring Equidyne to hold an annual stockholders meeting.[5]

Two days after MFC filed its complaint, Equidyne set September 9, 2003 as the date of its "annual" stockholders meeting.[6] September 9, 2003 is fifteen months and twelve days after the date of Equidyne's last annual meeting.

Equidyne then filed a motion to dismiss MFC's § 211 claim. In its pleadings and at oral argument, Equidyne contended that MFC's § 211 claim was not yet ripe because thirteen months from the date of Equidyne's last annual meeting had not yet elapsed when MFC filed its complaint.[7]

According to prior Delaware decisional law, a stockholder does not have a cause of action under § 211 "until (*inter alia*) the corporation has failed to hold an annual meeting [or elect directors by stockholder written consent] for more than thirteen months after its last annual meeting." [8]

---

**3.** 8 *Del. C.* § 211.

**4.** Section 211 also allows this court to issue such an order if thirty days has elapsed without an annual stockholders meeting since the date designated in the certificate of incorporation or bylaws for such a meeting.

**5.** MFC also sought certain relief pursuant to 8 *Del. C.* § 220.

**6.** *See* Mot. to Dismiss at 3.

**7.** Equidyne also argued that MFC did not have standing to bring its § 211 claim and that this court did not have jurisdiction over MFC's claim. These contentions were based on the same factual premise animating Equidyne's ripeness defense—*i.e.*, that the thirteen-month anniversary of MFC's last annual meeting had not passed as of the date MFC filed its § 211 claim.

**8.** *Walentas v. Builders Transp., Inc.*, 1990 WL 90939, at *3 (Del.Ch. June 26, 1990); *see also*

2 David A. Drexler et al., *Delaware Corporation Law and Practice* § 24.04, at 24–11 (2002)("The statutory right to seek judicial relief is triggered by the failure to hold the [annual] meeting either (a) for a period of 30 days after the date designated for the meeting, or if no such date has been designated, (b) for a period of thirteen months after the corporation's last annual meeting or consent solicitation in lieu of annual meeting, or, if no annual meeting or consent solicitation in lieu of annual meeting has ever been held, the organization of the corporation."); Lawrence A. Hamermesh, *Corporate Democracy and Stockholder–Adopted By–Laws: Taking Back the Street?*, 73 Tul. L.Rev. 409, 480 n.301 (1998)(citing 8 *Del. C.* § 211(c); *Walentas*, 1990 WL 90939)("Delaware ... permits commencement of an action to enforce [the annual meeting] mandate only if 13 months have already elapsed since the last annual meeting.").

The reason for that is that the court's power to order an annual meeting is only triggered after certain periods have passed without an annual meeting or stockholder action by written consent to elect directors in lieu of an annual meeting.[9]

But what is left unanswered by prior case law is whether a stockholder may file a § 211 claim before the thirteen-month anniversary if, at the time he files his complaint, it is legally impossible (1) for the corporation to convene an annual meeting by the date of the thirteen-month anniversary and (2) for the stockholders to act by written consent in lieu of an annual meeting by that same thirteen-month anniversary date. Under the authority upon which Equidyne relied, the issue was framed as one of ripeness, not jurisdiction;[10] a correct assessment, I believe.

As Equidyne's bylaws stood on the date MFC filed its complaint—June 24, 2003—Equidyne could not have convened an annual stockholders meeting by June 28, 2003 because it did not have enough time to provide each stockholder with ten days notice of the meeting as is required by those bylaws. At oral argument, counsel for the parties were asked whether Equidyne's stockholders could—under federal and Delaware law and Equidyne's governing instruments—begin the process of acting by written consent on June 24, 2003 and complete that process by June 28, 2003. Neither side's counsel could provide a satisfactory answer to that question. Thus, it was unclear to the court whether on June 24, 2003 it was impossible—as a technical, legal matter—for Equidyne to comply with the "annual meeting" requirement of Delaware law.[11]

Recognizing that time was of the essence—by the time of oral argument, Equidyne had already set September 9, 2003 as a meeting date—I dismissed MFC's § 211 claim without prejudice and allowed it to file an amended complaint that would clearly be ripe under established § 211 law—i.e., an amended complaint that would be filed after the thirteen-month anniversary date. I dismissed MFC's original § 211 claim with its consent and allowed it to re-file for reasons that were entirely practical in nature. By taking these actions, I avoided the issue of whether Equidyne's stockholders could have acted by written consent in advance of the statutory thirteen-month deadline and what the consequences of that answer would be for the ripeness of MFC's claim, and, most importantly, I paved the way for a more expeditious resolution to this matter. In other words, by simply allowing MFC to re-file a clearly ripe § 211 claim, I ensured that the core dispute between the parties—i.e., whether MFC is entitled to an order requiring Equidyne to hold an

---

9. *See* 8 *Del. C.* § 211(c)("If there be a failure to hold the annual meeting or to take action by written consent to elect directors in lieu of an annual meeting for a period of 30 days after the date designated for the annual meeting, or if no date has designated, for a period of 13 months after the latest to occur of the organization of the corporation, its last annual meeting or the last action by written consent to elect directors in lieu of an annual meeting, the Court of Chancery may summarily order a meeting to be held upon the application of any stockholder or director.").

10. *See Walentas,* 1990 WL 90939, at *1 ("Although denominated as a jurisdictional motion, the more accurate thrust of the defendant's position is that there is no claim that is presently ripe for adjudication.").

11. After oral argument, MFC's counsel advised the court of the reasons it believed that it would have been impossible—as a legal and practical matter—for Equidyne's stockholders to act by written consent within such a timeframe. *See* Letter from Brett D. Fallon to Vice Chancellor Leo E. Strine, Jr. 1–2 (July 31, 2003). By that time, an amended complaint had been filed.

annual meeting—would be decided promptly, without any unnecessary detours down a meandering legal road.[12]

MFC accepted my invitation to re-file and did so by filing an amended and supplemental complaint on July 30, 2003. A day later, Equidyne answered the amended complaint. In this opinion, I decide whether MFC is entitled to a court order requiring Equidyne to hold an annual stockholders meeting or whether its renewed and clearly ripe claim is moot as Equidyne argues.

## II.  *The Practical Import of MFC's Requested Relief*

In its amended complaint, MFC asked that I direct Equidyne to hold its annual stockholders meeting on September 9, 2003—*i.e.,* the same date that Equidyne has already set as the meeting date. A logical question arises: Why did MFC bother requesting a court order to set a meeting date that has already been established by Equidyne?

The answer: MFC desires an incident to a § 211 court order. Specifically, if a court order is issued pursuant to § 211, under § 211(c) the quorum for the annual meeting held pursuant to that order shall consist of "[t]he shares of stock represented at such meeting, either in person or by proxy, and entitled to vote thereat ... notwithstanding any provision of the certificate of incorporation or bylaws to the contrary."[13]  In other words, if I issue an order requiring Equidyne to hold its annual stockholders meeting on September 9, such a meeting will go forward even if the greater quorum requirements in Equidyne's governing instruments are not met. This special quorum rule helps guarantee that corporate stockholders—who have been deprived of their "annual" meeting for over thirteen months—will actually have such a meeting on the date set by the court and will elect directors that day.

## III.  *Legal Analysis*

With that background in mind, the issues for resolution are the following:

(1) Is it, as Equidyne contends, sufficient compliance with § 211 for Equidyne to have designated a meeting within thirteen months, even if the meeting so designated is to occur after thirteen months has expired?; and

(2) Assuming that the answer to (1) is no, should MFC's claim be dismissed as moot or should a court-ordered meeting be held with the quorum specified in § 211(c)?

I address these issues in turn.

### A.  *Has MFC Stated a Claim Under 8* Del. C. *§ 211?*

■  Section 211(c) states in part:

If there be a failure to hold the annual meeting or to take action by written consent to elect directors in lieu of an annual meeting for a period of thirty days after the date designated for the annual meeting, or if no date has been designated, for a period of 13 months after the latest to occur of the organization of the corporation, its last annual

---

12. The legal issue posed was whether a bright-line rule should exist requiring dismissal of a § 211 claim filed before the statutory thirteen-month period has expired because this court's power to provide relief does not arise until that time. Equidyne argued for such a rule based on the language of § 211 and the policy need to avoid the burden of premature filings on corporations and the court. MFC argued that a filing before the thirteen-month deadline ripens once it is impossible for the company to meet that deadline or, at the latest, once the deadline comes and goes without a meeting.

13.  8 *Del. C.* § 211(c).

meeting or the last action by written consent to elect directors in lieu of an annual meeting, the Court of Chancery may summarily order a meeting to be held upon the application of any stockholder or director.

Equidyne argues from this provision that MFC is not entitled to relief under § 211, because Equidyne fulfilled its responsibilities under § 211(c) by simply *designating* a date for an annual meeting before the expiration of the thirteen-month period. In other words, according to Equidyne, a corporation needs only to set the date of the annual meeting before the expiration of the thirteen-month period, even though, pursuant to its own designated date, the annual meeting will actually take place after the thirteen-month anniversary.

I disagree with Equidyne's reading of § 211(c). As an initial matter, Equidyne's reading of that statutory provision is contrary to clear statements in Delaware decisional law and corporate law treatises that relief under § 211 is available if a corporation fails to *hold* an annual meeting for a period of thirteen months since its last annual meeting. As then-Vice Chancellor Jacobs squarely held in *Walentas v. Builders Transport, Inc.*, § 211 requires a corporation to do more than merely designate the date of its annual meeting before the thirteen-month deadline; rather, § 211 requires that the corporation hold its annual meeting before the statutory timeframe expires.[14] And, as one learned treatise parses the statute:

The statutory right to seek judicial relief is triggered by the failure to *hold* the [annual] meeting either (a) for a period of 30 days after the date designated for the meeting, or if no such date has been designated, (b) for a period of thirteen months after the corporation's last annual meeting or consent solicitation in lieu of annual meeting, or, if no annual meeting or consent solicitation in lieu of annual meeting has ever been held, the organization of the corporation.[15]

I agree with that reading. The plain language of § 211(c) does not support Equidyne's argument. It is clear that the word "designated" in the clause "or if no date has been designated for the annual meeting," refers back to an earlier use of the word "designated" in the same sentence—*i.e.*, "If there be a failure to hold the annual meeting or to take action by written consent to elect directors in lieu of an annual meeting for a period of 30 days after the date *designated* for the annual meeting . . . ."[16] In other words, the disputed clause performs the role of an "extended conjunction" that says to the reader: even if the corporation has not designated a date for its annual meeting in its certificate of incorporation or its bylaws, then, in any event, it must hold a meeting within thirteen months of its last annual meeting or risk an adverse judgment under § 211.

Thus, the most sensible reading of this statutory text is to read it as a two-part sentence, with each of the two parts begin-

---

**14.** 1990 WL 90939, at *3 (citing cases); *see also* 1 Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 8–4(a), at 8–37 (2003) ("[I]t has frequently been held that a prima facie case for relief is established for purposes of Section 211 where it is shown that the plaintiff is a stockholder or director of the corporation and *either* that the annual meeting was not *held* within thirty days of the designated date or that no annual meeting . . . has been *held* for more that thirteen months." (first case of emphasis in original, second and third cases added)).

**15.** 2 Drexler et al. § 24.04, at 24–11 (emphasis added).

**16.** 8 *Del. C.* § 211(c) (emphasis added).

ning with the word "for." Under this reading, the right to relief under § 211 is triggered if the corporation fails "to hold the annual meeting or to take action by [stockholder] written consent," either:

1. "for a period of 30 days after the date designated for the annual meeting"

or

2. "for a period of 13 months after the latest to occur of the organization of the corporation, its last annual meeting or the last action by written consent to elect directors in lieu of an annual meeting." [17]

This reading also accords with the policy thrust of § 211, which is that corporations should hold *annual* meetings of stockholders.[18] The thirteen months of leeway can be viewed as an acknowledgement by the General Assembly of the practical need for a "grace period" of sorts. In other words, the General Assembly recognized that it is not always possible or advisable to hold an annual stockholders meeting before the exact date of the one-year anniversary of the last such meeting.

But this modest grace period is not a license to undermine the clear import of the term "annual meeting." By using this term, the General Assembly was mandating that corporations hold a stockholders meeting annually or risk the imposition of a court-ordered meeting under the special quorum rule of § 211(c). Under Equidyne's proposed reading of § 211(c), the "annual meeting" requirement of § 211 would be turned into more of a once-every-year-and-a-half-or-so meeting require-

ment. Because of practical realities and legal constraints—including notice requirements in corporate bylaws and federal securities requirements—a board who waits until near the thirteen-month anniversary to set a meeting date ordinarily will not be able to hold the meeting until months after the thirteen-month period expires. Therefore, the reading Equidyne advances would tend to undercut the central purpose of § 211.[19]

Here, Equidyne designated a day that is fifteen months and twelve days after the date of last annual meeting. At oral argument, Equidyne cited certain public filing deadlines that allegedly prompted it to designate such a late date as the date of the annual stockholders meeting, all of which were easily manageable had the board diligently planned in advance to hold a meeting within the statutory period. Nothing in the record justifies their failure to responsibly prepare for the holding of the required annual meeting within the expected timeframe.

### B. *Should the Court Issue the Injunction Requested by MFC?*

■ Because MFC has stated a claim under 8 *Del. C.* § 211, I must decide whether to issue an order requiring Equidyne to hold its annual meeting on a particular date. The reason for this is that § 211 does not require me to issue such an order every time a claim is stated under § 211. Instead, whether an injunction should issue is left to my equitable discretion.

---

17. *Id.; see* 2 Drexler et al. § 24.04, at 24–11 (parsing the statutory text in a similar manner).

18. *See generally* 8 *Del. C.* § 211(b).

19. *See Walentas*, 1990 WL 90939, at *3 (the reading of the statute adopted in this opinion "is sensible, for otherwise a board could 'designate' a meeting for a date many months beyond the thirteen month anniversary of the last meeting without any accountability to shareholders").

In a case like this one where the corporation has already announced a date for the annual stockholders meeting, the question I must consider is whether "there [is] some reason to suspect that the corporate defendant might behave inequitably."[20] Here, there is sufficient reason to believe that Equidyne might act inequitably. For instance, Equidyne failed to respond to MFC's May 24, 2003 letter, in which MFC requested that Equidyne announce the date of the 2003 annual meeting. And MFC, which has leveled serious allegations of mismanagement and corporate waste against Equidyne's officers and directors,[21] is in the process of waging a proxy fight against Equidyne's incumbent board. Finally, this is not a case when the company missed the thirteen-month deadline by days or, even, weeks. Rather, Equidyne's board missed the mark by a barn or two. In light of these facts, it hardly seems equitable, fair, or efficient to require MFC to come back to this court if Equidyne's normal quorum requirements turn out to cause a problem.[22]

### IV. Conclusion

For the foregoing reasons, MFC's request for judgment pursuant to 8 *Del. C.* § 211 is GRANTED. The parties shall submit a conforming final order within five days of the date of this opinion.

**20.** See *Walentas v. Builders Transp. Inc.*, 1990 WL 127804 (Del.Ch. Aug.31, 1990) (*Walentas II*).

**21.** See generally MFC's Mem. in Opp'n to Mot. to Dismiss at 6–7.

**22.** *Steinkraus v. GIH Corp.*, 1991 WL 3922, at *2 (Del.Ch. Jan. 22, 1991) (suggesting that when a corporation announces an annual meeting after the institution of a § 211 action,

an order requiring the meeting to be held on the date announced by the corporation should be issued even if it is unlikely that a quorum requirement will be a problem; "If ... [a quorum requirement] turns out to be a problem, it hardly seems efficient, fair, or necessary to require plaintiff to reinstitute her Section 211 complaint, which appears to justify the entry of an order requiring a meeting.").